JUSTICE GRAY
concurring in part and dissenting in part.
I concur in that portion of the majority opinion which reverses the District Court’s charging of investigation costs to the Fertterers. It is my view that issues numbered one, three and four by the majority need not be reached. I dissent from the majority opinion on issue two as stated. In addition, I would restate that issue as whether the Fertterers properly could be charged with felony fish and game violations under the law in effect at the time and hold that such charges clearly are precluded by § 87-1-102(1), MCA (1989). I also dissent on the issue of imposing on the Fertterers the increased jury costs associated with change of venue.
The majority states issue two as whether Title 87, MCA, provides an exclusive remedy for the illegal taking of game. I conclude that, with only specific exceptions, it does.
Title 87 constitutes the legislature’s enactment of a comprehensive statutory body of law regarding fishing, hunting and trapping in Montana. It ranges from simple licensing requirements to criminal penalties for certain activities relating to fish and game. One need look no further than the majority’s tortured construction of § 45-6-101, MCA, to see that rendering that statute application to the illegal taking of game was never within the contemplation or intent of the Montana legislature.
It is true that § 87-1-102(1), MCA (1989), references “any other state law pertaining to fish and game ....” Given the common understanding of “pertaining” as “having reference to” (Webster’s Ninth *86 New Collegiate Dictionary), the reasonable interpretation of that language is that other laws specifically referring to fish and game may be located elsewhere in the Montana Code Annotated. Indeed, a close review of Title 87 indicates that such other laws pertaining to fish and game do exist. Section 87-1-102(4), MCA (1989), for example, refers to Title 387, chapter 47. That chapter of Title 37 addresses outfitters and guides and, therefore, contains other state law pertaining to fish and game. There is simply nothing reasonable about an interpretation which construes the “any other state law pertaining to fish and game,” language in § 87-1-102(1), MCA(1989), to mean “any other state law on any subject which the Montana Supreme Court can bend, mold or strain into covering a fish and game violation;” yet that is the effect of the majority’s opinion in this case.
In addition, the majority concedes that the violations at issue here — that is, the felony charges — are fish and game violations without regard to where in the Montana Code the statutory basis for those violations is found. Even if one accepted the majority’s interpretation of § 45-6-101, MCA, it was improper to charge the Fertterers with felony fish and game offenses under the law in effect at the time.
Section 87-1-102, MCA (1989), addresses penalties and punishments for fish and game violations. A person violating Montana’s fish and game laws “is, unless a different punishment is expressly provided by law for the violation, guilty of a misdemeanor and shall be fined not less than $50 or more than $500, imprisoned in the county jail for not more than 6 months, or both.” Misled, perhaps, by the unartful drafting of the statute, the majority focuses in on the “different punishment” language, dismisses the misdemeanor designation and fails to place the statute into context with those which follow.
Criminal offenses in Montana are classified or designated as misdemeanors or felonies for purposes of jurisdiction and statutes of limitations; the designation is based upon the maximum potential sentence which could be imposed for the offense. Section 45-1-201, MCA (1989). All criminal offenses must be designated as misdemeanors or felonies. Id.
Section 87-1-102(1), MCA (1989), provides that all fish and game violations, wherever in Montana law the offense may be found, are misdemeanors. This clear statement of intent by the Montana legislature is simply ignored by the majority.
The majority relies on “unless a different punishment is expressly provided by law” language in § 87-1-102(1), MCA (1989), to reach its *87 conclusion that the Fertterers were properly charged with felony fish and game violations. It reasons that the placement of that clause prior to both the misdemeanor designation and the penalty provisions which follow it reflects legislative intent to provide for felony fish and game offenses. This analysis is flawed, given the clear misdemeanor designation. Notwithstanding the inappropriate placement of the “different punishment” language, it is clear that the clause was intended to modify the other penalty/punishment language in § 87-1-102(1), MCA (1989), and not the misdemeanor designation itself.
This intent is particularly clear by reading Secs. 87-1-102 and 87-1-111, MCA (1989), (Temporary, together. Section 87-1-102(1), MCA (1989), provides that all fish and game violations are misdemeanors and that, unless otherwise expressly provided, the penalty for fish and game misdemeanors is a fine of between $50 and $500, imprisonment in the county jail for not more than six months, or both.
Subsection (2) of § 87-1-102, MCA (1989), and § 87-1-111, MCA (1989), (Temporary), “expressly provide” for different penalties for certain fish and game misdemeanors. Section 87-1-102(2), MCA (1989), provides for increased fines; § 87-1-111, MCA (1989), {Temporary), provides for restitution in addition to the statutory fines and county jail terms. Neither of these statutes, however, impose a criminal penalty outside the range available for misdemeanors. See § 45-2-101(36) and (21), MCA (1989). Indeed, they merely provide for implementation of the “different punishment” language contained in § 87-1-102, MCA (1989). Absent statutory amendment to the clear statement that all fish and game violations are misdemeanors, no felony designations or punishments are authorized.
The soundness of this interpretation and analysis is best illustrated by a brief review of 1991 legislative action regarding fish and game violations. First, the 1991 legislature passed Senate Bill 240 as Chapter 277, Laws of 1991. The title of Senate Bill 240 begins “An Act to generally revise the law regarding fish and game misdemeanor penalties;”. This is a clear reflection of the fact that, at that time, all fish and game violations were misdemeanors. Indeed, Section 2 of Senate Bill 240 restructures § 87-1-102, MCA (1989), by placing the “different punishment” language after the specific punishments provided; as suggested above, this was always the intended meaning of the “different punishment” language. Importantly, Section 2 also inserted the language “except if a felony is expressly provided by law;” again, this is a clear statement by the legislature *88 that, until its 1991 action, all fish and game violations were misdemeanors.
The 1991 legislature then proceeded to create specific felony fish and game violations. It did so via Senate Bill 239, enacted as Chapter 329, Laws of 1991. The title of that bill begins “An Act establishing as felonies the sale of unlawfully taken wildlife and the possession of unlawfully taken wildlife having a value of more than $1,000;” (emphasis added). These are, of course, the very offenses committed by the Fertterers. A clearer statement of legislative intent to convert such offenses from misdemeanors to felonies hardly can be imagined.
In sum, it is my view that the Fertterers improperly were charged with felony offenses. I would reverse the felony convictions.
I would also reverse the District Court’s imposition of the jury costs associated with the change of venue. While I have serious reservations about the entire notion of assessing the costs associated with asserting the constitutional right to a jury trial against a convicted defendant, those fundamental questions about this Court’s Weinberger and Pease decisions can await another day. In upholding the assessment of such costs, absent an inability to pay, this Court stated in Weinberger that “Montana’s statute does no more than deprive a ‘financially able defendant of available funds which, in fairness, should be remitted to the public coffers.’” Weinberger, 204 Mont. 278 at 306 (citations omitted). In this case, application of the statute does much more.
Here, the District Court stated that “there is a great likelihood that prejudice exists so that the Defendants could not receive a fair trial from an unprejudiced and impartial jury” in Cascade County. It exercised its discretion to grant defendants’ motion “in order to assure a fair trial.” Because of the location in Cascade County of the extensive physical evidence to be offered at trial, the court determined that, “as a practical matter,” it was better to bring in a jury from Kalispell than to transfer the case to another county where a fair trial could be held. If the latter option had been utilized, the usual “costs of jury service” contemplated by § 46-18-232(1), MCA, would have been incurred and assessed.
Surely it offends every notion of fair play, if not due process, to penalize these defendants for their inability to obtain a fair trial in Cascade County. Just as surely it offends such notions where the District Court chose one option rather than the other, under § 46-13-204, MCA, in ensuring a fair trial and the significantly increased *89 expense of that option, according to the majority, can be imposed on the Fertterers. I cannot agree.
JUSTICE TRIEWEILER joins in the foregoing concurring and dissenting opinion of Justice Gray.
JUSTICE HUNT joins in the foregoing concurring and dissenting opinion of JUSTICE GRAY.